# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### ELKINS

| | |
|---|---|
| **JUSTIN TODD TOTTEN,** | |
| Plaintiff, | |
| v. | **CIVIL ACTION NO.: 2:14-CV-2 (BAILEY)** |
| **JAMES RUBENSTEIN, et al.,** | |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On January 8, 2014, Plaintiff Justin Todd Totten ("Plaintiff"), acting pro se, initiated this case by filing a civil rights complaint (the "Complaint") against the following Defendants: James Rubenstein, Commissioner of Institutional Operations; Karl Hoffman, President of Prime Care Medical, Inc. ("Prime Care"); Dr. Jerry Hahn, a physician employed by Prime Care; Dr. Tann, a consultant hired by Prime Care; Cecilia Janiszewski, Medical Director of Prime Care at the Northern Correctional Facility and Karen Pszczolkowski, Warden of the Northern Correctional Facility (collectively "Defendants"). Compl., ECF No. 1. On February 14, 2014, the Court granted Plaintiff permission to proceed as a pauper. Order, ECF No. 11. The matter is now before the undersigned United States Magistrate Judge for initial review and a Report and Recommendation to the District Judge pursuant to LR PL P 2 and 28 U.S.C. §§ 1915(e) and 1915A. For the reasons set forth below, the undersigned recommends that Plaintiff's Complaint be dismissed.

## II. BACKGROUND

In the Complaint, Plaintiff asserts claims of negligence, deliberate indifference and cruel and unusual punishment regarding the treatment of his hernia condition on the following dates: June 8, 2013;[1] June 11, 2013; June 14-27, 2013; June 27, 2013 and November 11, 2013. Compl. at 7-8, ECF No. 1. Specifically, Plaintiff asserts that he was denied proper medical treatment on these dates and seeks declaratory, compensatory and punitive relief. See id. at 7-9. In support of his claims, Plaintiff attached multiple exhibits to the Complaint. Id. at 13-15. Exhibits B(1) and B(2) comprise a "Medical Synopsis,"[2] which describes the medical treatment that was provided to Plaintiff on the above-listed dates. Id. at 16-17.

Plaintiff is a twenty-six-year-old male diagnosed with Hepatitis C, hypothyroidism, gastroesophageal reflux disease ("GERD"), an inguinal hernia and sinus problems. Compl. at 16, Ex. B(2), ECF No. 1. His daily medications include docusate sodium, ibuprofen and levothyroxine. Id. On June 8, 2013, while incarcerated at the Northern Correctional Facility ("NCF"), Plaintiff presented to the medical unit, complaining of abdominal pain. Id. During this encounter, Plaintiff reported that "he has [had] a hernia since February 2013." Id. A nurse examined Plaintiff and noted that Plaintiff had a history of hernias and had undergone a surgical hernia repair "[ten] years ago." Id. After an examination, the nurse scheduled a referral appointment for June 11, 2013, to rule out a hernia. Id.

---

[1] In his first claim, Plaintiff states that he was "denied proper medical treatment for his pain [on July 8, 2013]. See Exhibit B(1)." Compl. at 7, ECF No. 1. However, Exhibit B(1) is dated June 8, 2013. Therefore, the Court will assume that Plaintiff committed a typographical error and intended to use the date of June 8, 2013.

[2] The Medical Synopsis is referenced throughout. While the authenticity of the document is unknown, the undersigned has reviewed it in the light most favorable to Plaintiff.

On June 11, 2013, Plaintiff was examined by Andrew Howlett, a Physician's Assistant ("PA Howlett"). Id. During the examination, PA Howlett documented that Plaintiff's previous hernia repair came "undone." Id. Afterwards, PA Howlett provided Plaintiff with a hernia belt and scheduled Plaintiff for a surgical consult with Dr. Hahn. Id. Three days later, Plaintiff reported to a nurse that he wanted surgery and that the hernia belt "doesn't work . . . [and] doesn't fit." Id. Subsequently, the nurse provided Plaintiff with a smaller-sized hernia belt and educated him on "how to apply [the] belt and to wear [it] at all times." Id.

On June 22, 2013, Plaintiff returned to the medical unit, complaining of "hernia pain." Id. A nurse noted that Plaintiff was not wearing his hernia belt because he believed the belt did not work. See id. The nurse scheduled Plaintiff for a "doctor call" and instructed him to report any worsening symptoms. Id.

On June 27, 2013, Plaintiff received his "doctor call with Chad Hott, BSN, RN, CCHR-RN" ("RN Hott"). Compl. at 17, Ex. B(2), ECF No. 1. RN Hott examined Plaintiff and documented that Plaintiff had two small hernias, one in his left inguinal canal and one in his right inguinal canal. Id. RN Hott further documented that Plaintiff experienced pain in his "left and right inguinal area[s]" and that the "left hernia protrudes [at times] and has difficulty reducing." Id. After the examination, Plaintiff was instructed to avoid weightlifting and to "notify medical immediately of pain, no [bowel movement] or change in [bowel movements]." Id. Plaintiff requested an appointment with a physician. Id.

Plaintiff did not report to the medical unit again until August of 2013. Id. On August 18, 2013, Plaintiff complained of hernia pain and was given Advil 600 mg and scheduled for another doctor call. Id. On August 21, 2013, Plaintiff received a doctor call with Dr.

Hahn. Id. Dr. Hahn examined Plaintiff and estimated that Plaintiff's hernias were "2 cm in size." Id. After the examination, Dr. Hahn expressed an intention to renew Plaintiff's medications, continue treatment with the hernia belt and schedule another doctor call for a second opinion. Id.

On September 4, 2013, a "chart note" revealed that PA Howlett "had request[ed] a second opinion on [Plaintiff's] hernia" but that Plaintiff had already been examined by Dr. Hahn and a special hernia belt ordered. Id. On September 24, 2013, Plaintiff received his doctor call with PA Howlett. Id. During this encounter, Plaintiff complained of continuing hernia pain and constipation. Id. PA Howlett noted that Plaintiff had been wearing a hernia belt for five months and that the "belt [was] not helping." Id. PA Howlett instructed the medical unit to "try [to] approve [a] hernia repair consult." Id. However, on November 8, 2013, a chart note indicated that Dr. Hahn did not believe surgery was necessary and that Plaintiff had "agreed to try the hernia belt." Id. The chart note further indicated that Dr. Hahn would reassess Plaintiff the following week. Id.

On November 11, 2013, a chart note disclosed that Dr. Hahn was "unable to see [Plaintiff] this week" but that Dr. Hahn had "stated to proceed with [the] consult as written by [PA Howlett] on [September 24, 2013]." Id. On November 11, 2013, the surgical consult was approved. Id. Approximately two months later, on or about January 17, 2014, Plaintiff was released on parole. ECF No. 11. No information is provided in the Complaint regarding whether Plaintiff ever underwent a surgical hernia repair.

### III. STANDARD OF REVIEW

Because Plaintiff is a prisoner[3] seeking redress from a governmental entity or

---

[3] Plaintiff was incarcerated at the time the Complaint was filed, although he has since been

4

employee, the Court must review the Complaint to determine whether it: (1) is frivolous; (2) is malicious; (3) fails to state a claim upon which relief can be granted or (4) seeks monetary relief against a defendant who is immune from such relief. Rivera v. Fed. Bureau of Prisons, No. 3:14-CV-128, 2015 WL 3939623, at *1 (N.D. W. Va. June 26, 2015) (citing 28 U.S.C. § 1915A(a)-(b)). If a court determines that a complaint meets any of these four criteria, then the court must dismiss the complaint. 28 U.S.C. § 1915(e). A complaint states a claim upon which relief can be granted if it contains factual allegations that are sufficient "to raise a right to relief above the speculative level" and the "claim to relief . . . is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). Indeed, "a plaintiff must articulate facts that, when accepted as true, demonstrate that he has stated a claim entitling him to relief." Rivera, 2015 WL 3939623, at *1.

When determining whether a complaint states a claim upon which relief can be granted, a court must construe a *pro se* plaintiff's pleadings liberally. Id. Therefore, a court should not scrutinize the pleadings "with such technical nicety that a meritorious claim should be defeated." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978). In other words, a *pro se* complaint should not be summarily dismissed unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521 (1972) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).

---

released on parole.

## IV.  DISCUSSION

### A.  Legal Standard for Section 1983 Claims

Liability under 42 U.S.C. § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001) (internal citation omitted).  Thus, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right under § 1983. Rizzo v. Good, 423 U.S. 362 (1976).

### B.  Plaintiff's Eighth Amendment Claims

Plaintiff asserts that Defendants violated his constitutional rights by being deliberately indifferent to his medical needs and engaging in cruel and unusual punishment. To state a claim under the Eighth Amendment for ineffective medical assistance, a plaintiff must show that the defendant(s) acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A medical condition is serious in two circumstances. Hicks v. Janiszewski, No. 5:13CV140, 2014 WL 2778731, at *2 (N.D.W. Va. June 19, 2014). First, a medical condition is serious "when it has been diagnosed by a physician as mandating treatment[] or when [it] is so obvious that even a lay person would recognize the need for medical care." Id. Second, a medical condition is serious if a delay in treatment would cause a lifelong handicap or permanent

loss.[4] Id. Plaintiff has not asserted in his complaint facts regarding his hernia that meet either of these conditions.

To state an Eighth Amendment "cruel and unusual punishment" claim, a plaintiff/prisoner must prove: (1) the deprivation of a basic human need that was objectively "sufficiently serious" and (2) the prison official subjectively acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Id. at 303. To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hicks, 2014 WL 2778731, at *2. Mere disagreement between the plaintiff and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless "exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

In the present case, Plaintiff asserts that Defendants violated his constitutional rights by failing to adequately address his hernia but fails to provide the required factual support for his claims. For example, in claims one through five, Plaintiff provides the dates he was seen by the medical department and then refers to Exhibits (B)(1) and (B)(2) of

---

[4] The following are examples of conditions that qualify as serious medical conditions: (1) a broken jaw, Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); (2) a detached retina, Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995) and (3) arthritis, Finley v. Trent, 955 F. Supp. 642 (N.D. W. Va. 1997). Conversely, the following conditions do *not* constitute serious medical conditions: (1) a rotator cuff injury, Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997) and (2) a foot condition involving a fracture fragment, bone cyst and degenerative arthritis. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999).

the Complaint, which constitute a medical synopsis of his treatment at the NCF, presumably provided by NCF. Although reference to the medical synopsis gives the undersigned factual information regarding Plaintiff's claims, the factual information does not support that Plaintiff had a "serious condition" or that the medical staff acted with deliberate indifference.

There is no assertion in the complaint or attached documents that Plaintiff was deprived of a basic human need. In fact, the attachments to the complaint show that Plaintiff was seen on numerous occasions regarding his hernia and was given appropriate treatment, such as medicine and a hernia belt. Moreover, although Plaintiff alleges in general that Defendants failed to provide appropriate medical treatment for his serious medical conditions, Plaintiff fails to show how any of the Defendants, except Dr. Hahn, were even involved in his medical care. Further there is no allegation that Dr. Hahn deliberately disregarded Plaintiff's conditions, instead the attachments to the complaint reflect that the Plaintiff merely disagreed with Dr. Hahn's course of treatment.

Assuming *arguendo* that Plaintiff's hernia would be considered "serious" under the language of § 1983 and the Eighth Amendment, Plaintiff's claim is still unsuccessful because Plaintiff fails to allege that any Defendant acted with deliberate indifference. Although Plaintiff alleges that Defendants negligently failed to correct Plaintiff's hernia in an appropriate amount of time, a mere disagreement between the inmate and the prison's medical staff as to an inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Plaintiff, however, alleges no exceptional

circumstances. Further, for a claim of delay in treatment, Plaintiff has to allege a "life long handicap or permanent loss." Hicks, 2014 WL 2778731.

From June 8, 2013, through November 11, 2013, Plaintiff met with the medical staff at the NCF and complained about his hernias. ECF No. 1, Exhibits (B)(1) and (B)(2). On August 21, 2013, Dr. Hahn indicated that the hernias were two centimeters in size and that the treatment plan was to provide hernia belt and possibly schedule an appointment with a consulting physician. Id. According to Dr. Hahn, Plaintiff did not require surgery as of August 21, 2013. Id. On September 24, 2013, PA Howlett requested approval for a hernia repair consult. Id. On November 11, 2013, within seven weeks of that request, the surgical consult was approved. Id. Plaintiff was released on parole in January, 2014, and there is nothing in the Complaint to indicate that he ever received the hernia repair, whether at NCF or after he was released on parole. Thus, because Plaintiff makes no specific allegations of a violation of any constitutional right against Defendants, Plaintiff fails to state a claim upon which relief can be granted.

**C.     Plaintiff's Medical Negligence Claim**

In addition to his constitutional claims, Plaintiff asserts that Defendants have acted negligently. It is unclear if Plaintiff is asserting a state claim for medical negligence or if Plaintiff only wishes to pursue his constitutional claim for deliberate indifference. To the extent that Plaintiff is claiming negligence in his care, Plaintiff's cause of action is covered by the West Virginia Medical Professional Liability Act. To prove a medical negligence claim in West Virginia, a plaintiff must prove that: (1) "the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider

9

belongs acting in the same or similar circumstances" and (2) such failure proximately caused the injured or death. Hicks, 2014 WL 2778731, at *5 (quoting W. Va.Code § 55–7B–3. Additionally, the plaintiff must fulfill certain requirements, set forth by W. Va.Code § 55–7B–6, before suing a health care provider. Id. These requirements include providing the Court with a screening certificate of merit or, at the very least, a statement of intent to provide a screening certificate of merit. See id. Compliance with these requirements "is mandatory *prior* to filing suit in federal court for medical negligence." Id. (emphasis added). Because Plaintiff did not fulfill these requirements prior to filing suit, any medical negligence claim must be dismissed.

## V.     RECOMMENDATION

For the reasons herein stated, I **RECOMMEND** that Plaintiff's Complaint (ECF No. 1) be **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915 and 1915A.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208.

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the

Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED**: February 17, 2016

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE